MARGARET C. WALLACE, Executrix, etc., Respondent, *v.* ROBERT H. BERDELL et al., Appellants.

Where a question in an action was as to the delivery of a trust deed, and the uncontroverted evidence was sufficient to establish presumptively the delivery, so that it could be overthrown only by affirmative evidence,— *Held*, that the fact that the testimony of other witnesses who swore positively to the delivery was impeached, and was discredited by the court, did not authorize the court to infer affirmatively, the contrary of what was so testified to, and did not supply the want of affirmative proof to meet the uncontroverted evidence.

It was proved in this action that in 1862 a trust deed was duly and jointly executed and acknowledged by the grantor and grantee. It was attested, as a subscribing witness, by the commissioner who took the acknowledgment; the attestation clause stating that it was signed, sealed and delivered in his presence. It contained a clause whereby the grantee declared that he accepted the trusts and covenanted faithfully to perform them. On the same day an agreement was executed between the grantor and grantee, which recited that the former had, by deed bearing even date therewith, conveyed to the latter one of the parcels of land described in the trust deed, and had also transferred to him certain stocks ; these the grantee covenanted to sell and with the proceeds pay and satisfy a mortgage on the property. In 1867 the trustee died. In 1876 the trust deed was found in the possession of one of the beneficiaries under it. The grantor and the beneficiaries testified that the deed was in fact delivered, but evidence was given impeaching the testimony of the former and the latter were discredited by the court because of interest and omission to assert their rights until the grantor became involved. No other evidence was given as to delivery. *Held*, that the uncontroverted facts established clearly a sufficient delivery; and that a finding to the contrary was unauthorized.

*It seems*, that a deed once delivered is not invalidated by the fact that it remains in the possession of the grantor.

*It seems*, also, that if both parties to a deed, apparently designed as a voluntary settlement, be present, and the usual formalities of execution take place, and to all appearance the contract is consummated without

any conditions or qualifications annexed, it is a complete and valid deed although left in the custody of the grantor.

Where a trust deed is actually delivered to the grantee the rights of the *cestuis que trustent* attach, and the effect of the delivery cannot be impaired by any mental reservation on the part of the grantor, or oral condition, repugnant to the terms of the deed, attached to the delivery.

It is not competent, therefore, to show. for the purpose of defeating those rights, that the delivery was with intent that the deed should not take effect unless again delivered, or unless the grantor afterward determined that it should take effect, or upon any other contingency contrary to the terms of the instrument.

*So, also,* after such a deed once takes effect it is irrevocable, and its operation cannot be affected by any subsequent act of the grantor in exercising control over the property conveyed, or omission on the part of the trustee to perform the duties of the trust.

*Fisher* v. *Hall* (41 N. Y. 416), distinguished.

(Argued February 27, 1884; decided October 7, 1884.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made February 15, 1881, which affirmed a judgment in favor of the orginal plaintiff, entered upon a decision of the court on trial at Special Term.

This action was brought originally by Francis B. Wallace and John F. Phillips composing the firm of F. B. Wallace & Co. Phillips having died during the pendency of the action it was continued by Wallace as surviving partner. The latter died after judgment and pending the appeal, and the present plaintiff, his executrix, was substituted as plaintiff.

The original plaintiffs were judgment creditors of defendant Robert H. Berdell, and brought this action as such to have two deeds of certain real estate executed by said Berdell to his son, the defendant Charles P. Berdell, and also a judgment obtained against him by his daughter, the defendant Lizzie A. Miller, adjudged to be without consideration and fraudulent and void as against creditors. The defendants alleged that the consideration of the deeds and the claim upon which the judgment was rendered was an indebtedness of their father to them which grew out of the disposal, without their consent, of real estate which he had conveyed on December 12, 1862, to one

Parkhurst, as trustee, in trust for them, which trust deed was not recorded. The material facts pertinent to the questions discussed are stated in the opinion.

*Alfred Taylor* for appellants. The trust created by the deed of December, 1862, is valid. (§ 55, art. 2, chap. 1, title 2 of part 2 R. S.; 2 R. S. [7th ed.] 2181; *Gilman* v. *Reddington*, 24 N. Y. 9.) When the facts touching the delivery of a deed are undisputed their legal effect is a question of law. (*Rogers* v. *Carey*, 47 Mo. 232.) The law will presume delivery, and the onus is upon the parties seeking to overthrow the deed, to show, by clear and unmistakable evidence, that no delivery has ever in fact taken place. (*Brinckerhoff* v. *Lawrence*, 2 Sandf. Ch. 406, 488; 1 Phillips on Ev., § 568*a*; 2 id., § 297; 2 R. S., chap. 3, § 16; *Bryan* v. *Walsh*, 3 Ill. 537.) Where both parties have signed a deed in the presence of a witness and both have duly acknowledged it, the deed will be presumed to have been duly delivered. (4 Kent's Com. 456; *Scrugham* v. *Wood*, 15 Wend. 546; *McLean* v. *Butler*, 19 Barb. 450.) The question of delivery is a mixed question of law and fact. Such questions are reviewable in this court. (*Earle* v. *Earle*, 20 N. J. L. 348; *Lawton* v. *Sager*, 11 Barb. 349.) Delivery takes effect presently; parol evidence of conditions qualifying it is inadmissible. (*Worrall* v. *Munn*, 5 N. Y. 238; 23 Wend. 45; 4 Pick. 520; *Seymour* v. *Cowing*, 1 Keyes, 535; *Arnold* v. *Patrick*, 6 Paige, 310; *Braman* v. *Bingham*, 26 N. Y. 491; *Bracket* v. *Barrey*, 28 id. 341; *Cocks* v. *Baker*, 49 id. 110.) A settlor cannot derogate from his grant. (Perry on Trusts, 83, § 103; id. 86, 87, 88, 96, § 104; *Gilchrist* v. *Stephenson*, 9 Barb. 9; *Fordham* v. *Smith*, 46 N. Y. 683; *Hall* v. *Stewart*, 7 Hun, 592; *Villiers* v. *Beaumont*, 1 Vern. 100; *Souverbye* v. *Alden*, 1 Johns. Ch. 258; *Fellows* v. *Hermans*, 4 Lans. 230, 242; *Brinkerhoff* v. *Laurence*, 2 Sandf. Ch.     ; *Fisher* v. *Hall*, 41 N. Y. 416.) The right of a debtor to pay one debt if he chooses, even though he thereby gives that person a preference, is an inseparable incident of his dominion over his property, or his *jus disponendi*, and it is well settled on principle

and authority. (Bump on Fraud. Conv. 182, 185; *Auburn Ex. Bk.* v. *Fitch*, 48 Barb. 344; *Waterbury* v. *Sturtevant*, 18 Wend. 353; *Hale* v. *Stewart*, 7 Hun, 591.) The conveyances made in 1875 were not only in payment of what the grantor owed the grantee, but were also in pursuance of a prior promise to and agreement with Charles P. Berdell, when he arrived of age, and which in law and good conscience he was bound to perform before. (*Dygert* v. *Remerschnider*, 32 N. Y. 629.) In the absence of proof of the insolvency of the grantor a conveyance cannot be set aside. (*Childs* v. *Connor*, 6 J. & S. 471.) As no intention or purpose of incurring future indebtedness is shown or suggested there could have been no purpose at the time of the transfer to defraud in making this conveyance. (Bump on Fraud. Conv. 310, 311; *Savage* v. *Murphy*, 34 N. Y. 508; *Shand* v. *Hanley*, 71 id. 319.) The consideration of the transfer in 1875 was adequate. (*Palen* v. *Bushnell*, 1 Hun, 319; *Brett* v. *Catlin*, 47 Barb. 404; *Van Wyck* v. *Baker*, 16 Hun, 168.) The plaintiffs in this action, being subsequent creditors, cannot question the adequacy of the consideration. (Bump on Fraud. Conv. 311, 313, 316.) If we regard the deeds and transfer voluntary, without consideration, other than love and affection, in view of the facts proven, the transfer is valid, and these plaintiffs have no standing in court to set them aside. (*Dygert* v. *Remerschnider*, 32 N. Y. 648; Bump on Fraud. Conv. 582; *Babcock* v. *Eckler*, 24 N. Y. 623; *Phillips* v. *Wooster*, 36 id. 412; *Loeschigk* v. *Hatfield*, 51 id. 660; *Cushman* v. *Addison*, 55 id. 628; *Bk. of U. S.* v. *Houseman*, 6 Paige, 256.) The continuance in possession of a grantor of real estate, while it may be a circumstance proper to be considered, does not of itself warrant a finding as a legal conclusion that the deed was fraudulent. (*Clute* v. *Newkirk*, 46 N. Y. 684; *Hall* v. *Tuttle*, 8 Wend. 376; *Vanbuskirk* v. *Warren*, 34 Barb. 466; *Mitchell* v. *West*, 55 N. Y. 107.) Whatever may be the effect of a voluntary conveyance as regards creditors at time conveyance was made, it is not void as to subsequent creditors, unless made with an actual intent to defraud them. The burden of proving actual fraud always.

rests with the creditor. (*Loeschigk* v. *Hutfield*, 5 Robt. 26 ;
Bump on Fraud. Conv. 308, 310, 311.) Where an error con-
sists in the admission or rejection of evidence, it cannot be
disregarded by the appellate court. (*Worrall* v. *Parmalee*,
1 N. Y. 519 ; *Williams* v. *Fitch*, 18 id. 546; *Starbird* v.
*Barrows*, 43 id. 200 ; *Baird* v. *Gellett*, 47 id. 186 ; *Anderson*
v. *R. W. & O. R. R. Co.*, 54 id. 334.) In respect to
exceptions to evidence, there is no distinction between legal
and equitable actions. (*Norton* v. *Mallory*, 63 N. Y. 438.)

*S. W. Fullerton* for respondent. The plaintiffs acquired a
specific lien upon the real estate in question by the levy of
their attachment and execution which were outstanding when
this action was commenced. (*Falconer* v. *Freeman*, 4 Sandf.
Ch. 565; *Clarkson* v. *Depeyster*, 3 Paige, 320 ; *Frost* v. *Mott*,
34 N. Y. 253 ; *Rinchey* v. *Stryker*, 28 id. 45 ; *Adsit* v. *But-
ler*, 87 id. 585.) Where any evidence is given showing the
probable truth of the facts it will be assumed by this court to
have been correctly found irrespective of any rebutting evi-
dence given by the opposite party, no matter what the weight
of such rebutting evidence may be. (*Burgess* v. *Simonson*,
45 N. Y. 225 ; *Stillwell* v. *Mut. L. Ins. Co.*, 72 id. 385 ;
*Stevens* v. *Mayor, etc.*, 84 id. 296 ; *Chamberlain* v. *Prior*, 2
Keyes, 539 ; *Marvin* v. *Brewster Iron Co.*, 55 N. Y. 538.)
If the trust deed in question was never delivered by Mr. Ber-
dell to Mr. Parkhurst, with intent that it should take effect as
a grant of the property therein described, then the title to the
property remained in Mr. Berdell, and a sale thereof by him
to the bank did not constitute him a debtor to his children for
its value. (*Jackson* v. *Bodle*, 20 Johns. 184 ; *Jackson* v.
*Phipps*, 12 id. 418 ; *Roosevelt* v. *Caron*, 5 Barb. 190 ; *Brack-
ett* v. *Barney*, 28 N. Y. 333; *Fisher* v. *Hall*, 41 id. 416.)
There being at the time of the transfers to Charles, and the
judgment in favor of Lizzie, an existing legal liability of Robert
H. Berdell to the plaintiffs, enforceable by action against him,
the plaintiffs were existing, and not subsequent creditors.
(*Cary* v. *White*, 52 N. Y. 138 ; *Foxell* v. *Fletcher*, 87 id. 476 ;

*Star Ins. Co.* v. *Palmer*, 41 N. Y. Sup. 267; *Van Wyck* v. *Seward*, 18 Wend. 375, 385; *Young* v. *Heermans*, 66 N. Y. 374, 384.) Whether the plaintiffs are deemed creditors whose claims accrued subsequent or prior to the transfers, they were entitled to have the transfers set aside. (*Carpenter* v. *Roe*, 10 N. Y. 227; *Savage* v. *Murphy*, 34 id. 508; *Case* v. *Phelps*, 39 id. 164; *Cole* v. *Tyler*, 65 id. 73; *Shand* v. *Hanley*, 71 id. 319.)

RAPALLO, J. The decision of this appeal turns upon the question of the delivery of the trust deed of December 12, 1862, from Robert H. Berdell to S. C. Parkhurst. The trial court found that this deed was inoperative for want of delivery, but the appellants claim that this finding was erroneous as matter of law. If this point is sustained, and the uncontroverted evidence so far established a delivery of the deed that the defendants Charles and Lizzie could have maintained an action against their father for the trust property appropriated by him to his own use, then the subsequent conveyances made by him to Charles and the judgment recovered against him by Lizzie A. in 1876, were founded upon a valuable consideration, and one of the chief grounds upon which those conveyances and the judgment were held to be fraudulent fails, and a new trial must be granted, even though there may be evidence in the case tending to show fraud in fact in those conveyances independently of the question of a valuable consideration; for it cannot be assumed that such fraud in fact would have been found, if the validity of the consideration had been established.

The evidence on the part of the defendants clearly established a sufficient delivery of the trust deed. It was executed by Berdell on the day it bears date, December 12, 1862, in presence of Mr. Drake, a commissioner of deeds, by whom the deed was drawn. By the terms of the deed Mr. Berdell conveyed to Mr. Parkhurst three lots of land in Wooster street, New York, in trust to receive the rents and profits thereof and apply the same to the use of his three children, Theodore, Charles and Lizzie A., during their respective minorities, and

to convey to each of them on his or her coming of age, one-third of the property. It contained a clause whereby Mr. Parkhurst declared that he accepted the trust and covenanted with Berdell to faithfully execute the same. It was signed and sealed by both Mr. Berdell and Mr. Parkhurst and attested by Mr. Drake as subscribing witness, the attestation clause stating that it was signed, sealed and delivered in his presence, and on the same day it was acknowledged before Mr. Drake as a commissioner of deeds, by both Berdell and Parkhurst, as their act and deed, as appears from the certificate of acknowledgment appended thereto. On the same day an agreement between Berdell and Parkhurst was executed by both parties and acknowledged before the same commissioner, which recited that Berdell had, by deed bearing even date therewith, conveyed to Parkhurst, in trust, the premises in Wooster street, part of which were subject to the payment of $13,000 secured by mortgage thereon, and that Berdell had transferred to Parkhurst certain stocks, and Parkhust agreed to sell and dispose of said stocks and with the proceeds satisfy said mortgage, and pay over the surplus to Berdell, and faithfully and diligently to execute said trust. Parkhurst died in 1867, and the trust deed, when first produced in court, was in possession of Charles P. Berdell, one of the beneficiaries under the trust. This was in the year 1876. Thus far the facts stated were proved by uncontroverted evidence and by the documents themselves. There is no evidence in the case touching the circumstances of the delivery of the deed and agreement, and their custody from the time of their execution until they were produced in court, except the testimony of Robert H. Berdell and Theodore and Charles P. Berdell.

Robert H. Berdell testified that on the day of the execution of the deed and agreement, December 12, 1862, the deed was delivered to Mr. Parkhurst; that he, witness, was present when it was so delivered, and at the time he executed it it was delivered by Mr. Drake to Mr. Parkhurst; that Parkhurst retained it until 1866 or 1867, when he delivered it to Theodore Berdell at the Fifth Avenue hotel in the presence of the

witness, and that afterward, in 1873, Theodore delivered it to Charles. These latter statements are confirmed by the testimony of both Charles and Theodore Berdell. Robert, H. testified that he retained Parkhurst's agreement to pay off the mortgage, but that he never had possession of the trust deed after it was handed to Parkhurst.

There is no evidence in terms contradicting any of these statements, either of Robert, Theodore, or Charles P. Berdell, but the plaintiffs relied upon evidence which was claimed to be sufficient to impeach the veracity of those witnesses. The most direct evidence of this description was the testimony of Robert H. Berdell, read from the stenographer's notes in the case of *Berdell* v. *Berdell*, taken in the spring of 1876, by which it appears that Berdell then testified that he thought he gave the trust deed to Theodore seven or eight years before; was quite sure he did, and thought he was then in Goshen; that he thought it was executed in duplicate, and that one was taken by Parkhurst and the other by himself. Afterward, on the 29th of June, 1876, as appears from the stenographer's notes in the case of *Parkhurst* v. *Berdell*, he testified that he never saw the trust deed after it was acknowledged and handed over to Parkhurst, until Theodore showed it to him in 1866, and that he never gave it to Theodore, and there was no duplicate.

On the present trial this discrepancy was explained by Berdell, by stating that he had in his mind the agreement as to the mortgage, called the trust agreement, executed at the same time with the trust deed. This agreement he testified that he had retained. Of course, the sufficiency of this explanation was for the trial court to decide, and the respondent is entitled to the benefit of any finding thereon in his favor, by the trial judge. Berdell's testimony was also assailed by showing that after the execution of the trust deed he continued to deal with the trust property as his own, receiving the rents, and mortgaging and conveying the property for his own debts. He testified that immediately after the execution of the trust deed Parkhurst took charge of the trust property and collected the

rents. Parkhurst was in the employ of Berdell, and it appears that from 1862 to 1865, when Parkhurst left his employ, an account was kept in Berdell's books in the name of S. C. Parkhurst, trustee, in which the rents collected from the trust property were entered, as well as the stocks stated in the trust agreement to have been transferred to Parkhurst for the purpose of paying off the $13,000 mortgage. Berdell went out of business in 1865, and after that time no further account appears to have been kept, but Berdell, after that time, collected the rents. These acts of Berdell could have no legal effect as revoking or impairing the trust deed, if it ever took effect, and if admissible in evidence, were relevant only as being inconsistent with his testimony in support of the delivery of the deed, and to that extent impeaching it.

There is no contradiction of the testimony of Theodore and Charles P. Berdell as to the custody of the deed, but their testimony appears to have been discredited by the trial judge, on the ground of their interest in the case, and their omission to assert their rights under the trust deed until after Robert H. Berdell became involved in difficulties. But granting to the evidence on the part of the plaintiffs, and to the circumstances appealed to by them, all the effect which could be claimed as impairing the force of the testimony of the Berdells, and even putting it in the power of the trial court to wholly reject it, that is the extent to which the rights of the *cestuis que trustent* could be affected. If independently of the testimony of those witnesses enough was shown by uncontroverted testimony to presumptively establish the trust deed as a valid, completed and delivered instrument, so that it could only be overthrown by affirmative evidence, the absence of such affirmative evidence could not be supplied by impeaching the testimony of witnesses given in support of the validity of the deed. Even if the inconsistencies and circumstances relied upon as justifying the court in rejecting the testimony of those witnesses were sufficient for that purpose, the discrediting of their testimony did not authorize the court to infer affirmatively the contrary of that which they testified to.

It is necessary, therefore, to consider the case as it stands, independently of the testimony claimed thus to be discredited. If enough was shown to establish, without that testimony, a presumptive or *prima facie* case of the valid execution and delivery of the deed, sufficient to pass the title and cause the interests of the donees to vest, the case was not weakened by the further testimony given in aid of that case, even though such further testimony was so far assailed as to justify its being disregarded.

There was no evidence whatever in this case that the trust deed, after its execution, was left in the possession of the grantor, though even if it had been so left, that circumstance alone would not have invalidated it, provided it had once been delivered. (*Souverbe* v. *Arden*, 1 Johns. Ch. 240.)

In cases of voluntary settlements courts have gone great lengths in sustaining the validity of deeds, without affirmative proof of any delivery, and the earlier cases hold that a voluntary settlement fairly made, is binding in equity, unless there is clear and decisive proof that the grantor never parted or intended to part with possession of the deed, and that if he retains it, there must be other facts to show that it was not intended to be absolute. (1 Johns. Ch. 256; *Barlow* v. *Heneage*, Prec. in Ch. 210; *Clavering* v. *Clavering*, 2 Vern. 473; affirmed, 7 Bro. P. C. 410; *Lady Hudson's Case*, 2 Vern. 476; *Johnson* v. *Boyfield*, 1 Ves. Sen. 314; *Exton* v. *Scott*, 6 Simons, 31, and other cases.) In all these cases the instrument was shown to have been retained by the grantor until his death, and there were no circumstances tending to show a delivery. This court, in *Fisher* v. *Hall* (41 N. Y. 416), declined to follow those cases in so far as they wholly dispensed with any evidence of delivery. But the delivery of a deed, like any other fact, may be inferred from circumstances, and the rule as laid down by Chancellor KENT, in 4 Kent's Com. 456, though frequently adverted to and commented upon in adjudged cases, I do not find ever to have been questioned. The learned commentator says: " If both parties be present, and the usual formalities of execution take place, and the contract is to all appearances

consummated, without any conditions or qualifications annexed, it is a complete and valid deed, notwithstanding it be left in the custody of the grantor."

This rule was applied in the case of *Scrugham* v. *Wood* (15 Wend. 545), where it was held that a deed of marriage settlement which was read and signed by both grantor and the trustees, and acknowledged as their deed before an officer authorized to take acknowledgments, was a complete and valid deed, notwithstanding the witnesses present at its execution united in testifying that there was no formal delivery of it, and the deed, after the death of the grantor, was found in his secretary among his private papers. NELSON, J., in delivering the opinion, observes, that the grantor was much more interested in the execution and preservation of the deed than either of the trustees, and the fact of its being in his possession at his death, therefore, did not, under the circumstances of the case, necessarily create any presumption against the idea that a delivery was intended at the time of its execution.

In the present case, as before observed, there is no evidence that the deed remained in the possession of the grantor. When first produced it was in the possession of one of the *cestuis que trustent*. It was signed and sealed by both grantor and grantee. The trustee by his solemn acts of signing, sealing, and acknowledging, accepted the trusts, and covenanted to perform them, and on the same day both grantor and grantee united in executing in like manner an agreement which recited that the grantor had conveyed to the trustee the property described in the trust deed, and had delivered to him certain securities which the trustee agreed to apply to the discharge of a mortgage upon the trust property. Independently of the positive affirmative testimony of Mr. Berdell and his two sons that the deed was actually delivered to the trustee and was received from him by one of the sons, the circumstances were abundant to presumptively show a complete execution and delivery of the deed. In *Fisher* v. *Hall* (41 N. Y. 416), the facts were entirely different. The grantee was not present at the execution of the deed. He did not execute or

acknowledge it, but was ignorant of its existence till long after the death of the grantor, who was shown to have retained it till his death. *McLean* v. *Button* (19 Barb. 450) more nearly resembles the present case. (See, also, *Fletcher* v. *Fletcher*, 4 Hare, 67.)

The finding of the trial court upon this point is somewhat peculiar and admits of the construction that there was a manual delivery but that it was conditional, or contingent, and therefore no delivery, and this seems to have been the construction put upon the finding at General Term. The finding is, "that said deed was never delivered by said Robert H. Berdell to the said Sylvester C. Parkhurst, or to any other person for him, nor was the same ever accepted by the said Parkhurst, nor was it ever delivered to or accepted by said Parkhurst with intent on the part of said Berdell, or on the part of said Parkhurst, that it should take effect; that said deed was not executed and acknowledged by said Berdell and Parkhurst, or either of them, with intent that it should be delivered or take effect, except in the event that the said Berdell should thereafter deliver said deed to the said Parkhurst or determine that it should take effect."

The General Term in their opinion say that they are of the opinion that the evidence leads to but one conclusion, namely, that the trust deed was made for a temporary purpose only, that it was not absolutely delivered, but that the delivery thereof was upon a contingency which did not happen.

If this be the correct view of the facts, the conclusion that the deed was invalid is clearly erroneous. It must be borne in mind that the present controversy is not an attack on the validity of the trust deed as fraudulent as against creditors, but as inoperative as between the parties to it. If it ever was actually delivered to the grantee, the rights of the *cestuis que trustent* attached, and the effect of the delivery could not be impaired by any mental reservation, or any oral condition attached to the delivery, which would be repugnant to the terms of the deed. The delivery having been to the grantee himself, neither party would have been permitted to show, for

the purpose of defeating the rights of the *cestuis que trustent*, that the delivery was with intent that the deed should not take effect, or that it should not take effect unless again delivered, or unless the grantor should afterward determine that it should take effect, or upon any other contingency whatever, contrary to the terms of the instrument. (*Worrall* v. *Munn*, 5 N. Y. 229, 238; *Lawton* v. *Sager*, 11 Barb. 349; *Arnold* v. *Patrick*, 6 Paige, 310, 315.)

The facts principally relied upon for the purpose of showing that the trust deed never took effect are the continued possession by Berdell of the trust property, his collection of the rents, and his dealing with the property as his own, and applying it to the payment of his own debts, after the execution of the trust deed. These acts could not, however, impair the rights of the beneficiaries under the trust. If the deed ever took effect it was irrevocable, and no act of the grantor, or omission on the part of the trustee to perform the duties undertaken by him, could affect the operation of the deed. If completely executed and delivered, no power of revocation being reserved in the deed, a secret intention on the part of the grantor that it should not take effect would be unavailing. There is no question here as to the trust deed having been executed with intent to defraud the creditors of the grantor. The question is, whether it was valid as against him, and he would not have been permitted, as against the beneficiaries or the trustee, to allege that he did not intend that it should take effect, or that his intention was that it should only take effect upon some contingency. If, either by direct proof or by circumstances, it was shown that there was such a delivery of the deed as would have made it effectual if it had been made to a purchaser of the property, the title passed, and the subsequent acts of the grantor or the trustee could not affect it.

The court at the trial seems to have entertained a different view, for the learned trial judge refused to find as matter of law that the deed was not and could not be defeated by the subsequent acts of Berdell. The controlling question, therefore, is whether the uncontroverted evidence in the case before us es-

tablished the execution and delivery of the trust deed sufficiently to have enabled the children of Mr. Berdell to enforce the trust against him. We think that, throwing his testimony and that of his sons out of the case, enough appeared to have entitled the beneficiaries to enforce the trust, and that consequently a legal liability on the part of Robert H. Berdell existed, to make good the trust property which he had applied to his own use, and that liability was a sufficient consideration for the subsequent conveyances and judgment.

Mr. Berdell appears to have been in solvent circumstances when the trust of 1862 was created. It was a lawful and valid trust under the statute, and the circumstances under which it was made were such as fully to justify it. Mr. Berdell, having a family of children by his first marriage, was about to contract a second marriage, and it was quite just that he should devote a portion of his property to making provision for the children of his first marriage. The simple question here is, whether his intention to provide for them was so far effectuated as to vest in them equitable interests in the Wooster street property. If it was, their claims for compensation for those equitable interests subsequently appropriated by him were as much entitled to recognition as the claims of any other creditor.

The judgment should be reversed and a new trial ordered, costs to abide the event.

All concur.

Judgment reversed.