## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT

### OF

# NORTH DAKOTA

F. S. SARGENT, AS RECEIVER OF THE SECURITY TRUST COMPANY *v.*
JOHN E. COOLEY AND MINNIE E. CLIFFORD.

Opinion Filed November 14, 1902.

**Mortgage, and Agreement at Time of Delivery.**

1. Action to foreclose a mortgage upon real estate. The defendant John E. Cooley answered the complaint, and alleged, as a defense against the foreclosure of the mortgage, that the mortgage was given without consideration, and that certain agreements were entered into between the mortgagor and the mortgagee at and prior to the execution and delivery of the mortgage, which agreements so alleged are, in effect, as follows: (1) That the mortgage should not, in any event, be available to the mortgagee as security for the debt evidenced by the note described in the same; (2) that the mortgage should only take effect in the event that the note described therein should be negotiated or transferred; (3) that, if the note should be negotiated or transferred, the mortgage should operate only while the note was held by some outside party; and finally that when the note was returned to the mortgagee, if it ever was returned, the mortgagee should at once surrender the mortgage to the mortgagor, viz., to John E. Cooley.

**Discharge and Surrender of Mortgage.**

2. The trial court admitted testimony to sustain the defense, and adjudged that the mortgage should be discharged and surrendered to the mortgagor. *Held,* that such ruling was error.

**Evidence to Vary Terms of Mortgage—Common Law and Statute.**

3. *Held,* further, under the common rule voiced by sections 3517 and 3890 of the Rev. Codes of 1899, that the evidence offered to establish said agreement was inadmissible to defeat the written instrument, or to establish any conditions not found in the mortgage.

**Extraneous Agreements Discharged by Delivery.**

4. *Held,* further, that the mortgage, when delivered, took effect absolutely and according to its terms, and the same was wholly discharged from all the extraneous agreements and conditions pleaded in the answer.

**Previously Executed Note—Sufficient Consideration.**

5. The mortgage was not given for some two months after the execution and delivery of the note described therein. *Held,* that the note is sufficient consideration to sustain the mortgage.

**Defense of Failure of Consideration—Evidence to Vary Written Instrument.**

6. *Held,* further, that, where the defense to a written instrument is failure of consideration, parol evidence is inadmissible to controvert or vary the terms of the instrument, or to create terms or conditions not found in the writing.

*ON REHEARING.*

**Nondelivery—Parol Evidence.**

7. Parol evidence is always admissible to show that a real estate mortgage was not delivered, and such evidence is not open to the objection that it contradicts or varies the terms of the instrument. Where, however, a delivery is shown to have been made, the mortgage, under section 3517, Rev. Codes 1899, takes effect freed from all conditions upon which the delivery was made.

Appeal from the District Court, Grand Forks county. *Fisk,* J.

Action by F. S. Sargent, as receiver of the Security Trust Company, against John E. Cooley and Minnie E. Clifford. Judgment for defendants, and plaintiff appeals.

Reversed.

*Templeton & Rex,* for appellant.

Proof to break down a mortgage must be "clear, satisfactory and specific, and of such a character as to leave in the mind of the Chancellor no hestitation or substantial doubt." *McGuin* v. *Lee,* 10 N. D. 160, 86 N. W. 717.

Under the statute of this state, "A grant cannot be delivered to the grantee conditionally. Delivery to him, or his agent, as such, is necessarily absolute; and the instrument takes effect thereupon, dis-

charged of any condition on which the delivery was made." Rev. Codes, 1899, section 3517. A mortgage is a grant. Rev. Codes, section 4727. The provisions of the chapter on transfers in general concerning the delivery of grants absolute and conditional, apply to all written contracts. Rev. Codes, 1899, section 3890. *Merrill* v. *Hurley,* (S. D.) 62 N. W. 958; *Mowry* v. *Henry,* 86 Cal. 471, 25 Pac. 17. The same rule applies to delivery of mortgages as to deeds. 20 Enc. of Law, 905.

Delivery without mistake or fraud, of a duly executed deed, passes a title, which can be divested only by a condition in the deed itself. 9 Am. & Eng. Enc. of Law 163. Deed, land contract or other instrument cannot be delivered to grantee, or obligee or other beneficiary, as an escrow. *Lowber* v. *Connit,* 36 Wis. 176. 11 Am. & Eng. Enc. of Law, 337.

The taker of a negotiable promissory note of a third person as collateral security to a pre-existing debt, is, under the great weight of authority, a bona fide purchaser. *Dunham* v. *Peterson,* 5 N. D. 417, 67 N. W. 293. The existing obligation is suffcent to sustain the security. Rev. Codes, 1899, section 3872. *Bank* v. *Lamont,* 5 N. D. 393, 67 N. W. 145.

*Tracy R. Bangs,* for respondents.

Mortgages have been recognized as accommodation paper, and are often made for the sole purpose of accommodation. *Bridges Adm'r* v. *Blake, et al.* 6 N. E. 833.

The mortgage was simply left with Mr. Clifford to be retained as collateral to any liability of the Security Trust Company by reason of the negotiation of the notes; and if the notes were never negotiated, then the time never came when the mortgage was of any effect, Hence there never was a delivery, and the Trust Company has no rights in it. This would be true even though it were a deed. *Gilbert* v. *North America Fire Ins. Co.,* 23 Wend. 43.

WALLIN, C. J. This action is brought to foreclose a mortgage upon real estate, which mortgage was executed by the defendant, John E. Cooley, and delivered by him to the Security Trust Company; and, upon its face, the mortgage purports to secure a promissory note for $500, dated December 20, 1893, which note was executed by said Cooley, and was by him delivered at the date of its execution to the Security Trust Company. After a trial without a jury, the district court entered a money judgment against defendant Cooley

for the amount claimed in the complaint; but it was further adjudged by that court in substance, that the mortgage sought to be foreclosed by this action is invalid, and was at all times worthless as a security in the hands of the Security Trust Company, and the court below directed the plaintiff to cancel the same of record and surrender it to the defendant John E. Cooley. From such judgment, plaintiff appeals to this court, and demands a trial of certain issues of fact in this court, which are specified as follows: (1) Was the mortgage in suit executed, acknowledged and delivered by defendant Cooley? (2) If so, was the same given to secure a part of the debt evidenced by the note sued on herein? (3) If so, has said mortgage ever in any manner been released, discharged or otherwise rendered of no effect?

In this court the controlling question presented for determination is whether the mortgage is a valid security, and, as such, available to the plaintiff for purposes of foreclosure. The contention of the defendant Cooley is fully set out in his answer to the complaint as follows:

"(2) Further answering, this defendant alleges that the said mortgage was given to the said Security Trust Company by this defendant without any consideration whatever therefor, but simply as an accommodation to the said Security Trust Company, to enable it to sell, assign, transfer, negotiate, and hypothecate the note evidencing the indebtedness described in said mortgage to some person or persons to this defendant unknown, and to enable the said trust company to make a true statement to such purchaser, transferee, or pledgee that the said note was secured by mortgage on real estate, and to enable the said trust company to realize on said note by negotiating or hypothecating the same.

"(3) That at the time of the making and delivery of the said mortgage, it was understood and agreed by and between the said Security Trust Company and this defendant that the said mortgage should be, and was, given for the sole purpose as set forth in paragraph 2 of this third defense, and that the same should be, and was, accepted by the said trust company for the same purpose, and no other; that it was further stipulated and agreed by and between the said trust company and this defendant that the said mortgage was not given or received as security to the said trust company, but that the same was given and received, and was by the said parties understood and intended to be, as security only to the transferee or the pledgee of the said note; and it was further agreed that the said

mortgage should not be placed of record, but that the same should remain in the office of the said trust company until the said note should be returned to the said trust company, and that then the said mortgage should be delivered up to this defendant and canceled.

"(4)  That the said mortgage has wholly fulfilled the purpose for which the same was made and accepted, that the said note evidencing the indebtedness purporting to be secured by said mortgage has been returned to the said trust company, and that the defendant, under the terms of the said agreement, is now entitled to have the same delivered up to him and canceled. Wherefore this defendant asks that the plaintiff's cause of action be dismissed, and that he, the said defendant, do have judgment against the said plaintiff for his costs and disbursements herein."

Upon the issues as specified in the statement of the case, the first question of fact presented is whether defendant John E. Cooley executed the mortgage, and delivered the same to the Security Trust Company. As to this question of mere fact there is, and can be, no contention. It is conceded that subsequent to the delivery of the $500 note described in the mortgage, and on February 19, 1894, the defendant Cooley did execute and deliver the mortgage to the Security Trust Company and further, that after said company became insolvent, and on July 27, 1897, said mortgage was recorded in the office of the register of deeds of Grand Forks county.

The second question of fact is whether the mortgage was given to secure a part of the debt evidenced by the note sued on. We are quite clear that an affirmative answer must also be given to this question. It appears by the answer, as well as by the testimony, that in so far as the mortgage was intended to operate as security for the performance of any act whatever, it was given, and intended to be given to secure the $500 note described in the mortgage, which note, it appears, has never been paid; and the same has been merged in, and forms a part of, the note sued on in this action. Nor is such merger controverted in this court. If we understand the position taken by appellant's counsel in this court, it is not that the mortgage was not, in any event, intended to be given as a security for the payment of the $500 note described in the mortgage. On the contrary, the contention of counsel corresponds to the averments in the answer of the defendant Cooley in this respect, and both are to the effect that the mortgage was given, and intended to be given, to secure the debt evidenced by the note described in the mortgage; but it is

further contended and alleged in behalf of John E. Cooley, that he executed the mortgage as an accommodation to the mortgagee, and without consideration, and pursuant to an agreement in substance as follows: (1) That the mortgage was in no event to take effect or operate as a security in favor of the mortgagee; (2) that the same should take effect only in the event that the note described in the mortgage should be negotiated, transferred, or hypothecated by the mortgagee; (3) that, whenever and as soon as the note should be returned to the mortgagee, the mortgage should cease to operate as a security, and in that event the mortgagee should surrender the mortgage to said John E. Cooley; and that the mortgage should not be recorded, but kept in the vaults of the Security Trust Company. Upon these allegations of the answer, we have no difficulty in reaching the conclusion that the mortgage was intended to be given, conditionally, as a security for the payment "of a part of the debt evidenced by the note sued on herein."

The third question presented is whether the mortgage has in any manner "been released, discharged, or otherwise rendered of no effect." This, obviously, is the crucial question in the case. The mortgage was given voluntarily, and there is no claim that it was obtained either by mistake or fraud, and there can be no doubt that the note which it purports to secure is a substantial consideration for its execution. True, the mortgage was given two months after the execution of the note, but it is well settled that the same consideration which supports a principal debt will likewise support any collateral undertaking given to secure the payment of the principal debt. Nor is it at all necessary that the collateral undertaking should be given at the inception of the principal debt. See *Red River Valley National Bank* v. *Barnes,* 8 N. D. 432, 438, 439, 79 N. W. 880. The mortgage therefore rests upon a valuable consideration, and, unless the agreement pleaded in the answer can be upheld, the mortgage is and at all times has been a valid security in favor of the mortgagee for the debt which it purports to secure.

At the trial, evidence was received, against objection, which was offered by the defense in support of the collateral agreements alleged in the answer to the complaint. The evidence was offered for the purpose of defeating and setting aside a written instrument which is plain and unambiguous in its terms. The mortgage, by its terms, purports to be a security in favor of the mortgagee named therein, and the evidence is offered to defeat the mortgage as security in the

hands of the mortgagee, and to show that it never was given or intended as such security. It is our opinion that the evidence is not admissible, and that the case must be governed by an established rule of the common law, which has been recognized and clearly expressed in the Civil Code of this state. The common-law rule to which we refer was applied to a grant or deed of real estate by the Supreme Court of California in *Mowry* v. *Heney,* 86 Cal. 471, 25 Pac. 17. In that case a deed of real estate was delivered to the grantee by the grantor at a time when the grantor was ill and expected to die, and it was the grantor's intent (known to the grantee), that the deed should not take effect if the grantor recovered from her illness. Upon these facts the court held that the deed took effect when delivered according to its written terms, and that its operation as a deed could not be defeated by parol evidence of the intent of the grantor in delivering the deed, or the conditions upon which the same was delivered. In its opinion (page 475, 86 Cal., page 19, 25 Pac.) the court quoted the following passage from Devlin on Deeds (section 314) with approval: "A deed cannot be delivered to the grantee as an escrow. If it be delivered to him, it becomes an operative deed, freed from any condition not expressed in the deed itself, and it will vest the title in him, though this may be contrary to the intention of the parties. One of the grounds upon which the rule is based is that parol evidence is inadmissible to show that the deed was to take effect upon condition." In 9 Enc. L. (2d Ed.) p. 163, the rule as applicable to deeds of conveyance is stated as follows: "The delivery, without mistake or fraud, of a duly executed deed, passes a title which can be divested only by a condition in the deed itself." See cases in note 2, Id. This rule has the support of an overwhelming weight of authority, and in this state it is clearly voiced by section 3517, Rev. Codes 1899, which reads: "A grant cannot be delivered to the grantee conditionally. Delivery to him or his agent, as such, is necessarily absolute; and the instrument takes effect thereupon, discharged of any condition on which the delivery was made." This common-law rule, as applied to deeds, was at the common law equally applicable to mortgages and other written instruments. The rule is stated in 20 Enc. L. 905, as follows: "A mortgage, like any other deed, must be delivered, and rules respecting delivery that are applicable to deeds generally must be applied to mortgages." Nor is there any reason apparent to us why the same rule should not be applied to all agreements entered into without mistake or

fraud, and which have been deliberately reduced to writing, and we find that such is the established rule of law. The rule is expressed in 11 Enc. L. (2d Ed.) · 337, as follows: "It is a general rule that a deed or other instrument cannot be delivered to the grantee, obligee, or other party to have the benefit of the instrument, as an escrow, to take effect on a condition not appearing on its face. To allow a different rule would be to permit the legal effect of a written instrument, complete to all outside appearances, to be · varied and in many instances defeated by oral proof." In *Lowber* v. *Connit*, 36 Wis. 176, this rule was applied to a written agreement to convey land; and the court, referring to the cases which apply the rule as to conditional delivery of deeds of conveyance, said: "We see no reason why the same rule should not apply to the delivery of a written contract for the sale of real estate." But in the ·state of North Dakota all questions of the applicability of this rule to all written instruments is set at rest by section 3890, Rev. Codes 1899, which is as follows: "The provisions of the chapter on transfers in general concerning the delivery of grants, absolute and conditional, apply to all written contracts." We have seen that section 3517, which governs "transfers," declares that a transfer takes effect on· its delivery, "discharged of any condition on which the delivery was made"; and, under section 3890, this provision applied with equal· force to "all written contracts," and hence it must be applied and must govern the alleged conditional delivery of the mortgage in question.

The agreements set out as a defense in the answer of John E. Cooley are squarely repugnant to the terms of the mortgage, and are of such a character as not only to vary and contradict its terms, but they go much further, and embody a contract wholly different from that stated in the written instrument. It is alleged that this contract was entered into at the time the mortgage was executed, and that the same was the inducement for its execution. If this extraneous agreement is valid and binding in the law, it will follow that the writing itself must give way to such agreement. But the rule is that contemporaneous agreements and negotiations are conclusively presumed to be merged in the writing. . Proof is allowed of such agreements in cases where fraud, mistake, or failure of consideration is alleged as a ·ground of defense. But in the case at bar there is an attempt not only ·to defeat the mortgage for want of consideration, but to create a new and wholly different contract by an alleged agreement not embraced in the instrument. The recent case. of *First*

*National Bank of Langdon* v. *Prior,* 10 N. D. 146, 86 N. W. 362, is directly in point against the defendant's position. In that case a mortgage upon real estate upon its face was given to secure a series of four notes, and two notes had been paid before the forclosure suit was commenced. In that case the defense attempted to show that under their answer the mortgage should be satisfied for the reason that, when the same was given, it was orally agreed that, when the two notes first falling due were paid, the mortgage should be released and surrendered to the defendants. In overruling this defense the following language was used: "As soon as the first two notes would be paid, the mortgage ceased as security for the last notes. The mortgage provided otherwise. The proposed oral agreement was inconsistent with the terms of the mortgage. It varied and contradicted its terms. It defeated its operation so far as two notes are concerned. It in no way was a collateral undertaking to the mortgage, but concerned the very essence of the security, and embodied a new contract directly antagonistic to the provisions of the notes and mortgage. It proposed to limit the operation of the mortgage so that it would be security for two notes only, when, in terms, it is security for four. We cannot give effect to the proposed agreement, and hold that evidence concerning it was inadmissible for the reasons given. None of the numerous cases cited by appellants is based on a similar state of facts. They are adjudications holding that a different or additional consideration may be proven when the operaton of the written instrument would not be defeated, or they are cases holding that the modification of the written contract pertained to a collateral undertaking not inconsistent with the terms of the written instruments. *Bank* v. *Lang,* 2 N. D. 66, 49 N. W. 414, and cases there cited."

Under the rule of law established by the adjudications and recognized by the provisions of the Code which we have cited, it follows that the delivery of the mortgage in question was absolute, and when delivered the same took effect according to its terms, wholly discharged from the several conditions and agreements set out as a defense thereto in the answer to the complaint. The judgment of the trial court will therefore be reversed in so far as it adjudges that the mortgage herein is null and void, and in so far as it directs that the same be discharged of record and surrendered to the defendant Cooley; and the trial court will be further directed to

enter judgment in favor of the plaintiff as demanded in its com-
plaint.

YOUNG and MORGAN, JJ., concur.

## ON REHEARING.
### (April 28, 1903.)

YOUNG, C. J. A petition for rehearing was granted in this
case, and the same was fully argued at the first session of the March
term. Counsel for defendant, in his petition for rehearing, in refer-
ing to the admissibility of parol evidence offered at the trial to de-
feat the mortgage, very properly concedes that "there is no question
about the effect of the provisions of our Code (section 3517, Rev.
Codes 1899), if it is to be held that the mortgage was delivered to
the Security Trust Company for its use with any ·conditions at-
tached." His contention is that the mortgage "was not delivered
to the Security Trust Company to be used by them either absolutely
or conditionally." Again he says: "We have contended all along,
and what we contend now is, that this mortgage never was delivered
to the Security Trust Company, in the ordinary meaning of the term
'delivered.'" Further, that "in this case there was no mortgage that
was effective between the mortgagor and the mortgagee. The ver-
bal agreement was simply as to the disposition to be made by the·
Security Trust Company of an instrument left in its hands, and in
which it had no interest. There was no attempt to make an instru-
ment which would be operative between the parties." The petition
presents for determination the question whether the mortgage was
delivered—a question which was not seriously considered in the orig--
inal opinion, it being taken as a conceded fact that there was a de-
livery. As already stated, counsel for defendant concedes that if
there was a delivery of the mortgage, within the meaning of section
3517, Rev. Codes 1899, it took effect freed from any oral conditions
upon which the delivery was made, and that in that event the parol
evidence offered to establish such conditions was inadmissible. His
contention is that the mortgage was not delivered, and that the oral
evidence objected to was admissible to establish the fact of nondeliv-
ery. That parol evidence is admissible to show that a written instru--
ment was never delivered, and therefore never became effective, can-
not be doubted; and such evidence is not open to the objection that
it contradicts or varies the terms of the written instrument, for it does
nothing of the kind, but merely goes to one element of the contract

resting in parol, and essential to its existence as a contract, namely; the delivery. In this case we think the fact is conclusively established both by the pleadings and by the evidence that the mortgage was delivered. The complaint alleges a delivery, and the answer, in effect, admits it. In paragraph 2 of the defendant's third defense, he alleges that "the said mortgage was given to the Security Trust Company by this defendant * * * to enable it to sell * * * the note evidencing the indebtedness described in said mortgage, * * * and to enable the said trust company to make a true statement to the purchaser that the said note was secured by mortgage on real estate; * * * that, at the time of the making and delivery of the said mortgage, it was understood and agreed * * * that the said mortgage should be and was given for the sole purpose as set forth." After alleging that the mortgage was to be effective as security to the transferee of the note, he alleges that it was agreed that when the note should be returned to the Security Trust Company "the said mortgage should be delivered up to this defendant and canceled, * * * and that the defendant, under the terms of the said agreement, is now entitled to have the same delivered up to him and canceled." Briefly stated, the defendant alleges that he executed and delivered this mortgage to the mortgagee, who was engaged in negotiating real estate loans, so that the later might truly state and represent to a prospective purchaser of the note that it was in fact a secured note, and secured by the mortgage here in question. In our opinion, the defendant has alleged a complete delivery. He alleges that he gave the mortgage into the mortgagee's hands so that the latter might truly represent that the note was a secured note. Now, it is apparent that no such representation could truly have been made by the mortgagee unless the mortgage had been delivered for the purpose of becoming effective, and the note was in fact secured. Further, the mortgage was delivered to the mortgagee beyond his right to recall it, and no further act remained to be done by him to make it effective.

The case shows a delivery of the mortgage, accompanied by oral conditions; and, both under the common law and under our statute (section 3517), such oral conditions were extinguished by the delivery, and the delivery became absolute. Section 3517, Rev. Codes: 1899, provides that "a grant cannot be delivered to the grantee conditionally. Delivery to him or his agent as such is necessarily absolute; and the instrument takes effect thereupon discharged of any

condition on which the delivery was made." This section was for-
mulated by the Field code commission, and embraces the doctrine
laid down in *Worrall* v. *Munn,* 5 N. Y. 229, 55 Am. Dec. 330, and
*Braman* v. *Bingham,* 26 N. Y. 483. In *Worrall* v. *Munn* it appears
that one Prall had, by a contract under seal, agreed to convey to
Noah Worrall certain lands. Prall resisted an action for the spe-
cific performance of the contract upon the ground that "the agree-
ment was delivered (by his agent) upon the express condition that
it should be subject to the sanction of Prall, and was therefore not
binding on him unless he subsequently approved and ratified it. Prall
expressly refused to ratify the agreement. The delivery of the
agreement to Henry Worrall (Noah Worrall's agent) was not an
absolute delivery, in law." The court, in considering the question,
as to whether the agreement was delivered absolutely or condition-
ally, stated that "the law puts that question at rest. Here, according
to the evidence of Warner and Nixen, the delivery of the agreement
was directly to the agent of Noah Worrall, and that is equivalent
to a personal delivery to Worrall himself. The agreement was in
a perfect condition. It was signed and sealed by Prall. It was
delivered on condition that it be subsequently approved by Prall.
This was a delivery as an escrow. Such a delivery can only be made
to a stranger. It cannot be made to the party. If made to the party,
no matter what may be the form of the words, the delivery is abso-
lute, and the deed takes effect presently, as the deed of the grantor,
discharged of the conditions upon which the delivery was made;
and, where such a delivery is made, parol evidence of the conditions,
being contrary to the terms of the deed, is inadmissible. Here the
intent of Warner was to deliver the agreement to the appellant as an
escrow. It was not handed to Henry Worrall as an unexecuted and
imperfect paper. There was no direction to him to retain it, and
not to deliver it to the appellant, until it was ratified by Prall. It was
not left in his hands for a temporary purpose, and to be returned in
case Prall did not assent to it; but it was delivered to Henry Worrall,
as the agent of the appellant, as an executed and perfect instrument,
on condition that Prall subsequently assented to it. Such a delivery
was in law, an absolute delivery. *Ward* v. *Lewis,* 4 Pick. 520; *Fair-
banks* v. *Metcalf,* 8 Mass. 238; *Gilbert* v. *Insurance Co.,* 23 Wend.
45, (35 Am. Dec. 543); *Clark* v. *Gifford,* 10 Wend. 313."

In *Braman* v. *Bingham* the question involved the effect of the de-
livery of a deed to the grantee. Upon the question of the admissibil-

ity of parol evidence to defeat the deed, the court said: "The ques-. tions in regard to the delivery of the deed were properly overruled.. The question, 'Was the deed delivered to take effect?' addressed to the party who signed the deed, I am inclined to think was objection-able, without reference to the circumstances under which the inquiry was made, as calling for a legal conclusion, or for the intention of the party, aside from what was said and done. The other question, 'Was the deed ever delivered?' would undoubtedly be proper where a de-delivery in fact was the matter in dispute. But here the defendant's answer admitted the delivery in fact, and the question in controversy was as to the intention of the parties, or the legal effect of such delivery. The only competent evidence bearing upon that question was what was said and done at the time. This the court decided to admit. The questions addressed to the witness, under the circum-stances, called for his opinion as to the legal effect of the conceded. actual delivery. That was a question to be decided by the court after all the facts attending the delivery should be proved." Again the court said in the same case: "A fatal objection to the third di-vision of the answer, as a defense, is that it shows that the deed was. delivered to the grantee, to be held by him in escrow. It is well set-tled that such a delivery vests the title in the grantee, although it may be contrary to the intention of the parties. *Lawton* v. *Sager,* 11 Barb. 349; *Worrall* v. *Munn,* 5 N. Y. 229 (55 Am. Dec. 330); *Gil-bert* v. *N. A. Fire Ins. Co.,* 23 Wend. 45, (35 Am. Dec. 453). * * * It has been held in one case that a deed may be delivered to the grantee for the purpose of transmission to a third person, to be held by him in escrow until the happening of some event when it should take effect as a conveyance, and that such delivery would not be ab-solute. *Gilbert* v. *N. A. Fire Ins. Co.,* 23 Wend. 43, (35 Am. Dec. 543). In that case the grantee had deposited the deed with the third person in pursuance of the arrangement, the condition had not been performed, and the grantee made no claim under the deed.. The case presented merely the question whether the grantor still retained an insurable interest in the premises described in the deed, the nom-inal grantee testifying to the terms in which the deed was delivered to him. Limited to its peculiar circumstances, no fault can be found with the decision; but if the grantee had retained the deed claiming that its delivery to him was absolute, and, in a contest between him and the grantor, parol proof of a conditional delivery had been of-fered, I think the result would have been different. If I am wrong

in this conclusion, the case discloses an avenue for the overthrow
of titles by parol proof which was supposed to be closed by the rule
to which it would seem to form an exception. The reason given for
the rule excluding parol evidence of a conditional delivery to the
grantee applies to all cases where the delivery is designed to give
effect to the deed in any event, without the further act of the grantor.
'When the words are contrary to the act, which is the delivery, the
words are of none effect.' Co. Litt. 36a. 'Because, then, a bare aver-
ment, without any writing, would make void every deed.' Cro. Eliz.
884. 'If I seal my deed and deliver it to the party himself, to whom
it is made, as an escrow, upon certain conditions, etc., in this case
let the form of the words be what it will, the delivery is absolute,
and the deed shall take effect as his deed presently.' Shep. Touch.
59; Whyddon's Case, Cro. Eliz. 520; Cruise, Dig. tit. 33, 'Deeds,'
c. 2, section 80. If a delivery to the grantee can be made subject
to one parol condition, I see no ground of principle which can ex-
clude any parol condition. The deed having been delivered to the
grantee, I think the parol evidence that the delivery was conditional
was properly excluded."

The cases just referred to have been followed in New York, and
represent the settled rule in that state. In *Lawton* v. *Sager*, 11 Barb.
349, the court, in considering the question as to whether a deed was
delivered absolutely or conditionally, said: "A deed can only be de-
livered as an escrow to a third person. If it be intended that it shall
not take effect until some subsequent condition shall be performed,
or some subsequent event shall happen, such condition must be in-
serted in the deed itself, or else it must not be delivered to the
grantee. Whether a deed has been delivered or not is a question
of fact, upon which, from the very nature of the case, parol evidence
is admissible. But whether a deed, when delivered, shall take effect
absolutely, or only upon the performance of some condition not ex-
pressed therein, cannot be determined by parol evidence. To allow
a deed absolute upon its face to be avoided by such evidence would
be a dangerous violation of a cardinal rule of evidence. *Gilbert* v.
*The North American Fire Insurance Company*, 23 Wend. 43, (35
Am. Dec. 543); *Ward* v. *Lewis*, 4 Pick. 518; 4 Kent's Com. 454;
*Jackson* v. *Catlin*, 2 Johns. 248, (3 Am. Dec. 415), per Platt, arguen-
do. The deed in this case, being absolute upon its face, and having
been delivered to the grantee himself, took effect at once. It could
not have been delivered to take effect upon the happening of a future

contingency, for this would be inconsistent with the terms of the instrument itself. Without regard, therefore, to any understanding which may have existed between the parties at the time the deed was delivered, it must be held to be an absolute conveyance, operative from that time." In *Blewett* v. *Boorum et al.,* 142 N. Y. 357, 37 N. E. 119, 40 Am. St. Rep. 600, Peckham, J., speaking for the court, said: "The rule in this state regarding deeds conveying real estate, or an interest therein, or agreements for the sale thereof, is that a delivery cannot be made to the grantee or other party thereto conditionally, or, as is said in escrow, and when delivered to a party the delivery operates at once, and the condition is unavailable. *Gilbert* v. *The North American Fire Insurance Co.,* 23 Wend. 43, (35 Am. Dec. 543) ; *Worrall* v. *Munn,* 5 N. Y. 229, (55 Am. Dec. 330) ; *Braman* v. *Bingham,* 26 N. Y. 483 ; *Wallace* v. *Berdell,* 97 N. Y. 13, 25. Whether there is any sound basis for a distinction between cases relating to real estate and other kinds of written instruments, it is not now important to inquire, for the rule that instruments of the former character cannot be conditionally delivered to a party is too firmly established in this state to be overruled or even questioned. In the case in 23 Wend. supra, Bronson, J., says it is one of the cases in which the law fails to give effect to the honest intention of the parties, for the reason that they have not adopted the proper legal means of accomplishing their object." *Wallace* v. *Berdell et al.,* 97 N. Y. 13, is to the same effect. As already stated, the doctrine of the two cases first cited is the statutory law of this state (section 3517, Rev. Codes 1899), and is controlling in this case.

Counsel for defendant, in support of his contention that evidence of the conditions attending the delivery of the mortgage was admissible, relies upon the case of *Burke* v. *Dulaney,* 153 U. S. 228, 14 Sup. Ct. 816, 38 L. Ed. 698, which lays down the rule that "the effect of the delivery and the extent of the operation of an instrument such as a promissory note may be limited as between the original parties thereto by the conditions on which delivery is made." This case does not sustain counsel's contention. In the first place, the decision is not based upon a statutory provision like ours, but rests entirely upon the common law; and, in the second place, the instrument in question in that case did not relate to real estate. It was a promissory note. And the decision does not purport to announce a rule as to the effect of the delivery of instruments relating to real estate, but does relate wholly to the rule which obtains in reference

to the delivery of unsealed instruments, or instruments not affecting real estate. As to such instruments, the common-law rule undoubtedly is (and this is true in New York also) that conditions attending their delivery may be shown by parol evidence. The cases cited in the opinion above referred to will be found to be of this class. The earlier cases, in determining whether a delivery in fact might be shown to have been conditional, made the test depend upon whether the instrument belonged to the class known as sealed, or unsealed. The later cases rest the distinction upon the subject matter of the instrument, and in *Blewitt* v. *Boorum, supra,* Peckham, J., after reviewing the English and American authorities, confines the rule which requires the exclusion of parol evidence of the conditional delivery of written instruments "to deeds or writings conveying or relating to the conveyance of real estate, or some interest therein." And that was the rule adopted by the Legislature of this state. Section 3517, supra. The common-law rule undoubtedly was that "an instrument not under seal may be delivered upon conditions, the observance of which as between the parties is essential to its validity, and the annexing of such conditions to the delivery is not an oral contradiction of the written obligation." *Bookstaver et al.* v. *Jayne,* 60 N. Y. 146 ; *Jamestown Business College Association* v. *Allen,* 172 N. Y. 302, 64 N. E. 956, and cases cited. This rule, however, does not aid defendant in this case, for we are dealing with an instrument affecting real estate, which, even under the rule of the common-law, (ignoring the statute), could not be delivered with conditions attached.

Counsel for defendant also contends that the conditions attending the delivery of the mortgage, and upon which he relies to defeat its enforcement, do not rest in parol, but that they were in writing. There is testimony to the effect that George B. Clifford, the western manager of the Security Trust Company, wrote a letter from Nashua, N. H., addressed to the Security Trust Company, or J. E. Clifford, assistant treasurer, at Grand Forks, requesting the latter to procure the mortgage in question. The letter in question was not produced, and secondary evidence as to its contents was received, over plaintiff's objection. The testimony shows that the letter was one of instruction to the Security Trust Company's officers at Grand Forks to procure the execution and delivery of the mortgage substantially upon the conditions pleaded by the defendant in his answer. The contention "that the written instrument consisted of

two parts—one, the instrument in form of a mortgage; the other, the written instrument in the form of a letter"—cannot be sustained. Conceding, merely for the purpose of this opinion, that sufficient foundation was laid for the admission of secondary evidence of its contents, we are agreed that this letter is in no sense a part of the mortgage. It was not addressed to the defendant, and contained no promises to the defendant directly. It was merely a letter of instructions to the local officers of the mortgagee, authorizing them to procure the mortgage upon the conditions named. The promises which they were authorized to make were made to the defendant orally, and in no sense can it be said that the mortgagor executed and delivered to the defendant a writing embracing the provisions upon which he now relies to defeat the mortgage. The letter of instructions may have been sufficient to have authorized the local officers of the mortgagee to execute a writing embracing such conditions, but they did not do so. The defendant was content to accept their oral promises as to the use to which they would put the mortgage executed and delivered by him. The Legislature of this state deemed it wise to withhold the right to rely upon such conditions where the instrument which would be defeated relates to real estate, and there had been a delivery in fact.

The conclusions in the original opinion will be adhered to.

MORGAN and COCHRANE, JJ., concur.